

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable T. C. Andrews, Chairman
Board of Pardons and Paroles
Austin, Texas

Dear Sir:

Opinion No. O-3406
Re: (1) Right of convict to
waive conditional pardon,
have it cancelled and re-
turn to penitentiary as
convict in good standing
the same as when the con-
ditional pardon was issued.

(2) Authority of prison
officials to accept convict
returning under conditions
outlined.

This is to acknowledge receipt of your request for
our opinion, from which we quote the following:

"On the 16th day of December, 1940, W. P.
Parker, TPS No. 94002, was granted a conditional
pardon by the Governor upon the recommendation
of the Board and was released from the peniten-
tiary. He was first released to W. K. Howarth
of Houston, but was transferred to Brigadier
William George Gilks, of Dallas.

"Mr. Gilks wrote us April 4, 1941, whose
letter is hereto attached, showing that he would
like to get the boy back in the penitentiary with-
out revoking his conditional pardon. The letter
explains that he has not violated any law, but it
seems he is unable to hold a job and he says that
the boy is anxious to go back to the penitentiary
if he can do so without forfeiting his good time
and being classed as a parole violator, and that
the kin people of the boy also think that he would
be better off if he returned to the penitentiary.

Honorable T. C. Andrews, Page 2

"Mr. Waid has written the Board a letter doubting that he has the authority to accept the convict back without his parole being revoked. I would just like to know, from the letters herein, if you could answer the following questions:

"(1) Has this defendant the right to waive his conditional pardon and have it cancelled and return to the penitentiary as a convict in good standing the same as when the conditional pardon was issued?

"(2) Has Mr. Waid, the prison warden, the authority to accept him back in the penitentiary under such conditions without having the conditional pardon revoked?"

Upon examination of the proclamation issued by Governor O'Daniel upon recommendation of the Board of Pardons and Paroles, we find the following language:

"If he is guilty at any time of any misconduct or violation of the law, or for any other reason the Governor may deem sufficient (including any facts not known to the Governor at the time of this clemency), this conditional pardon is subject to revocation at the Governor's discretion, with or without hearing, as the Governor may determine, and the said W. P. Parker may be, by order of the Governor, returned to and confined in the penitentiary until the end of his sentence."

The above quoted language follows other conditions imposed in the proclamation, namely that the said Parker go to work, totally abstain from use of intoxicating liquors, etc., none of which appear to have been considered by you as violated by him.

The authority of the executive power to grant conditional pardons has been fully established. Any reasonable condition may be imposed. Acceptance of a conditional pardon carries with it an acceptance of the conditions upon which the pardon is granted; and it has been said that unless the conditions are unreasonable, illegal, immoral or impossible of performance,

they are binding. It is essential to the validity of a conditional pardon that it be accepted by the person in whose favor it is issued. When so accepted, however, the conditions become alike binding upon both grantor and grantee. 31 Tex. Jur. 1267, § 10; Ex parte Frazier, 91 Tex. Cr. R. 475, 239 S. W. 972.

In the Frazier case appears the following:

"* * *. Appellant was a convict, held in custody by constituted authority, under sentence imposed by the courts. The Governor alone could grant him relief from his situation, and, the relief being one of grace and not constraint, the grantor could impose therein such conditions as he saw fit, within bounds of legality and morality. Appellant was not compelled to accept any pardon when offered, but, if one be tendered with conditions and he did accept, the conditions became alike binding on both grantor and grantee. It seems to be without possible dispute that there may be a stipulation in such grant as to who or what authority may be looked to to decide if any conditions imposed, be violated; and, if there be such stipulations, this part of the grant is equally binding upon both parties with any other. In the instant case appellant accepted a pardon with conditions, and containing a stipulation as to who should decide when the conditions were violated; said stipulation being in these words:

"'If the said Frazier is guilty of any misconduct or violation of the laws of this state, or there arises any other good and sufficient reason in the opinion of the Governor justifying him in doing so, this pardon is subject to be revoked at the Governor's discretaion.'

"It seems to us that this recital makes it plain that the Governor was agreed upon by the parties to the grant, as the sole arbiter when and what should be held a termination of the grant. Of what use or avail would a court hearing or judgment be, when it is agreed upon and written into the document as decisive that whatever in the Governor's opinion justifies

Honorable T. C. Andrews, Page 4

him shall be ground for revocation. There
is nothing in the terms of the grant which
binds the Governor to hear testimony pro and
con, or which points out the route he must
take in arriving at a conclusion that the
grantee had violated the law or been guilty o
of misconduct, or done any other thing deemed
of such character by the Chief Executive as
to merit the revocation. * * *.

"* * *.

"In our opinion the conditions imposed
by the pardon granted appellant were neither
illegal nor immoral, and by acceptance of
same he bound himself to submit to a revoca-
tion when made by the Governor for any causes
which, in the opinion of the latter, justified
such action. Such revocation could not and did
not deny to appellant his right to a writ of
habeas corpus, but when brought before the
courts in obedience thereto he has no right--
and we no power--to go beyond the terms agreed
upon by him in his acceptance, and by the Gov-
ernor in his grant, of such pardon."

See also Ex parte Redwine, 91 Tex. Cr. R. 83, 236 S.
W. 96; Ex parte Davenport, 110 Tex. Cr. R. 326, 7 S. W. (2d)
589, 60 A. L. R. 1403.

From the language of the Frazier case, supra, it seems
clear that the Governor would be sustained, if he should deter-
mine it to be to Parker's interest and the interest of society
to choose to revoke the clemency extended by virtue of the con-
ditional pardon. The expressions contained in the Parker pro-
clamation are not materially at variance from those used by
Governor Neff in extending a conditional pardon to Frazier.

As the matter now stands, however, the Governor has
not seen fit to exercise his prerogative to revoke the clemency
and send Parker back to the penitentiary. The question is, can
Parker, having accepted the act of grace and mercy on the part
of the chief executive of this State, and having exercised his
choice for freedom by accepting the pardon and leaving the penal
institution to which he had been committed, now or later (at his
own whim) decide to repudiate the clemency he sought and which
was conditionally granted?

Honorable T. C. Andrews, Page 5

It is our opinion that since Parker accepted the conditional pardon with all of its terms and conditions, the choice of revocation lies exclusively within the discretion of the Governor; that such clemency once accepted by a convict cannot be afterwards waived and nullified by a mere determination on the part of the convict that he had rather be incarcerated than comply with its terms, followed by voluntary surrender. We therefore answer your first question in the negative.

It follows that the penitentiary authorities would have no authority to accept a convict returning to the prison under the circumstances outlined by you.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 1, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By
Benjamin Woodall
Assistant

BW:RS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN